NOT FOR PUBLICATION                                              (Document No. 5)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| CARY BROOKS, | : |
| Plaintiff, | : Civil No. 12-2821 (RBK/AMD) |
| v. | : **OPINION** |
| BROOKDALE SENIOR LIVING COMMUNITIES, INC., | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter arises upon Plaintiff Cary Brooks's ("Plaintiff") claims against her former employer Defendant Brookdale Senior Living Communities, Inc. ("Defendant"). Plaintiff alleges that Defendant discriminated and retaliated against her in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* (2012) and the New Jersey Workers' Compensation Law ("NJWCL"), N.J.S.A 34:15-1 *et seq.* (2012). Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint and to compel arbitration. For the reasons stated below, the Court finds that Plaintiff's claim must be dismissed because she executed a valid waiver of her right to sue her employer for claims of discrimination and retaliation. Instead, her remedy is to seek arbitration. Therefore, the Court will grant Defendant's motion to dismiss Plaintiff's complaint and to compel arbitration.

**I.      FACTUAL BACKGROUND**

Plaintiff began her employment with Defendant as a Medication Dispensation Technician in February 2007.  Def.'s Br. in Support of Mot. to Dismiss 1.  On February 22, 2007 she received an Associate Handbook ("Handbook").  This document described various company policies and procedures, including Defendant's Binding Arbitration Procedure.  Lavin Decl. Exh. A 35-37.  The introduction to the Handbook specified that it was "only intended to be a source of information and a general statement of Brookdale policies and procedures.  It is not a contract of employment, expressed or implied, or a promise of employment upon specific terms." *Id.* at 3.  Further, under the heading of "Employment," the Handbook states:

> The policies and procedures set forth in this Handbook are not intended to create an employment contract or any other type of contract, nor are they to be construed as contractual obligations of any kind or an offer to form a contract.

*Id.* at 5.

On the same date that she received the Handbook, Plaintiff signed an "Associate Handbook Receipt and Acknowledgement" form.  Lavin Decl. Exh. B.  The form contained the following language:

> I understand this Handbook does not create a contract of employment, express or implied, between Brookdale and me and I should not view it as such, or as a guarantee of employment for any specific duration . . . .
>
> I understand that Brookdale has an Employment Binding Arbitration policy in place should any disputes arise between Brookdale and me, and that I agree to arbitrate the dispute by a final binding arbitration.

*Id.*

In April 2010, Plaintiff suffered physical injuries in the course of her employment.  Compl. ¶ 5.  She requested accommodation for her injury, but Defendant allegedly refused to

provide it. *Id.* at ¶ 7. Shortly thereafter, Defendant terminated Plaintiff's employment. *Id.* at ¶ 8.

In April 2012, Plaintiff filed suit in New Jersey Superior Court, asserting claims for discrimination based on physical disability in violation of the NJLAD, and for violation of the NJWCL. Defendant timely removed the case to this Court on the basis of federal diversity jurisdiction[1] and filed the instant motion to dismiss. Defendants argue that, by signing the Associate Handbook Receipt and Acknowledgement form, Plaintiff waived her right her right to sue her former employer in court for discrimination and retaliation. Instead, Defendants continue, her sole remedy is the arbitration process provided for in the Associate Handbook. Plaintiff responds that because both the Handbook and the Acknowledgement form explicitly state that they are not the basis for a "contract of employment," neither document creates any binding commitment to arbitrate work disputes. Pl.'s Opp. Br. 2.

## II. DISCUSSION AND ANALYSIS

The Federal Arbitration Act (the "Act") provides that agreements to arbitrate "in a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). This provision illustrates a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the Act, if one party to a valid arbitration agreement refuses to submit her claims as provided for under the agreement, the aggrieved party may seek an order in United States district court seeking to compel arbitration. 9 U.S.C. § 4. Upon determining that a

---

[1] Specifically, Plaintiff is a citizen of the state of New Jersey while Defendant is a citizen of the states of Delaware and Tennessee. In addition, the amount in controversy is more than $75,000. *See* 28 U.S.C. § 1332(a)(1) (2006).

binding agreement exists between the parties, the district court is obliged to direct the parties to proceed to arbitration. *Id.*

Determining whether an arbitration agreement is enforceable generally requires application of state law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where, as here, the agreement was formed in New Jersey and both parties appear to agree that New Jersey law should apply, the Court begins its analysis by acknowledging that the state's courts have "recognized arbitration as a favored method for resolving disputes." *Garfinkel v. Morristown Obstretics & Gynecology Assocs.*, 773 A.2d 665, 670 (N.J. 2001). Simiarly, the legislature has codified its endorsement of the arbitration mechanism. *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) (citing N.J.S.A. 2A:24-1 *et seq.*). Accordingly, it is well settled in New Jersey that parties to a valid arbitration agreement may waive statutory remedies in favor of arbitration, even in cases involving alleged discrimination under the NJLAD. *Garfinkel*, 773 A.2d at 670.

Under New Jersey law, to determine whether parties are bound to resolve a particular dispute through arbitration, the Court applies a two-step analysis. *Martindale*, 800 A.2d at 876, 881. First, the Court must consider whether a valid agreement exists between the parties. *Id.* at 876. Second, it must determine whether the particular claim asserted falls within the scope of the arbitration agreement. *Id.* at 881.[2]

The parties dispute that they entered into a valid agreement. On the one hand, the Court is mindful that "an agreement to arbitrate should be read liberally in favor of arbitration."

---

[2] The parties do not appear to dispute this issue. That is, Defendant's Arbitration Policy by its own terms extends to "claims for discrimination (including . . . discrimination based on . . . physical disability, or medical condition) . . . and/or claims for violation of any . . . state . . . statute." Lavin Decl., Exh. A 35. These provisions clearly cover the NJLAD and NJWCL claims that Plaintiff asserted in her Complaint. In her filings with the Court, Plaintiff does not offer any argument to the contrary. Thus, the Court will consider the second part of the *Martindale* analysis conceded in Defendant's favor.

*Garfinkel*, 773 A.2d at 670 (quoting *Marchak v. Claridge Commons, Inc.*, 633 A.2d 531 (N.J. 1993)). On the other hand, given the significance inhering in an agreement to waive one's right to judicial resolution of legal claims, a binding arbitration clause must state its purpose unequivocally. *See id.* That is, the party's waiver of her statutory rights to sue "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively. *Id.* (citing *Red Bank Regional Educ. Ass'n v. Red Bank Regional High Sch. Bd. of Educ.*, 393 A.2d 267, 267 (N.J. 1978)). In making this determination, the Court looks only to the four corners of the written instrument to determine the intention of the parties. *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003).

In this case, Plaintiff signed and dated the Acknowledgement Form accompanying the Associate Handbook.[3] The penultimate paragraph of the form, located approximately one inch above the signature line, reads as follows: "I understand that Brookdale has an Employment Binding Arbitration policy in place should any disputes arise between Brookdale and me, and that I agree to arbitrate the dispute by a final binding arbitration." Lavin Decl. Exh. B. Simply stated, this language provides the sort of "clear[] and unmistakeabl[e]" waiver of statutory rights required under New Jersey law sufficient to create a binding arbitration agreement. *See Garfinkel*, 773 A.2d at 670. Thus, the Court holds that Plaintiff is bound to arbitrate her discrimination and retaliation claims in an arbitral, rather than a judicial, forum. For this reason, the Court will grant Defendant's motion to dismiss Plaintiff's Complaint and to compel arbitration. *See* 9 U.S.C. § 4.

In reaching this determination, the Court is sympathetic to Plaintiff's concerns that, essentially, Defendant appears to have been talking out of both sides of its proverbial mouth

---

[3] On a motion to dismiss, the Court may consider "an undisputedly authentic document that a defendant attaches as an exhibit . . . if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litig.*, 7 F.3d 357 (3d Cir. 1993).

when it provided Plaintiff with the Handbook and Acknowledgement form. That is, the Handbook explicitly states that "the policies and procedures set forth in this Handbook," of which the Arbitration policy is necessarily a part, "are not intended to create . . . *any other type of contract, nor are they to be construed as contractual obligations of any kind*." Lavin Decl., Exh. A 5 (emphasis added). A reasonable employee reading this broad and unequivocal language might well be puzzled, then, to learn that her employer in fact specifically intended one particular policy in that Handbookto have binding effect on their employment relationship. While the defect is cured in the Acknowledgement Form by the use of language explicitly stating that the employee "agree[s] to arbitrate the dispute by a final binding arbitration," the inclusion of language on that same form reiterating that the "Handbook does not create a contract of employment, express or implied, between Brookdale and me" seems to work at cross purposes. Nothwithstanding Defendant's inelegant drafting techniques, the Court notes that the purported arbitration agreements that courts have found unenforceable suffered from far more serious deficiencies than are present in this case.[4] This fact, combined with the established practice of New Jersey courts to read agreements liberally in favor of arbitration, *see Garfinkel*, 773 A.2d at 670, persuades the Court to grant Defendant's motion.

### III. CONCLUSION

For the reasons stated above, the Court holds that Plaintiff contracted with Defendant to resolve discrimination and retaliation claims arising from her employment through a binding

---

[4] *See, e.g.*, Leodori v. CIGNA Corp., 814 A.2d 1098 (N.J. 2003) (no binding agreement because employee never actually signed the Acknowledgement Form assenting to arbitration clause); *Molloy v. Am. Gen'l Life Cos.*, No. 05-4547, 2006 WL 2056848 (D.N.J. July 21, 2006) (no agreement to arbitrate when all employer did was to send its employees a copy of the arbitration policy per e-mail and regular mail, send a reminder about the policy one year later, and keep a link on its intranet site for employees' reference); *Stewart v. Fairlane Community Mental Health Centre*, 571 N.W.2d 542 (Mich. Ct. App. 1997) (no agreement to arbitrate because employee never signed arbitration policy acknowledgement form); *Hubner v. Cutthroat Communications, Inc.*, 80 P.3d 1256 (Mont. 2003) (no agreement to arbitrate because employee signed the handbook itself instead of a separate acknowledgement form and handbook was ambiguous because it "both disclaimed itself as a contract in a number of places" but also "referred to itself as 'this contract' just before the arbitration provision);

arbitration process. Therefore, she is barred from asserting these claims in the first instance before this or any other court. Further, because a valid arbitration agreement exists between these parties, the Court must order Plaintiff to submit to arbitration. *See* 9 U.S.C. § 4 (2006). Accordingly, Defendant's motion to dismiss Plaintiff's complaint and compel arbitration will be granted. The Court will issue an appropriate order.


Dated:   12/18/2012                                                      /s/ Robert B. Kugler
                                                                         ROBERT B. KUGLER
                                                                         United States District Judge